IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:18-CR-66 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **LUIS SANABRIA-ROBRENO,** | : |
| | : |
| **Defendant** | : |

## MEMORANDUM

The court sentenced defendant Luis Sanabria-Robreno to 180 months' imprisonment after he pled guilty to distributing heroin and fentanyl, as well as possessing a firearm as a previously convicted felon. He now moves to vacate his sentence pursuant to 28 U.S.C. § 2255 on the ground that his sentence should not have been subjected to enhanced penalties under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We will deny Sanabria-Robreno's motion.

### I.   Factual and Procedural History[1]

On November 2, 2017, a confidential informant told law enforcement that he could purchase heroin and cocaine from a man known as "Cuajo," later identified as Sanabria-Robreno. (See 9/26/18 Plea Hr'g Tr. 14:25-15:1-4). The informant arranged to meet Sanabria-Robreno in Harrisburg that same day to purchase 10 bundles of heroin; investigators searched the informant and gave them $600 in

---

[1] The following factual narrative derives in large part from the government's proffer at defendant's plea hearing, to which Sanabria-Robreno fully admitted. (See Doc. 70, 9/26/18 Plea Hr'g Tr. 14:6-17:6). It also draws upon the transcript of the sentencing proceedings. (See Doc. 72, 5/28/19 Sentencing Hr'g Tr.).

prerecorded funds to complete the transaction. (See id. at 15:5-11). Sanabria-Robreno entered the informant's vehicle at the agreed-upon location and sold the informant a substance suspected to be heroin. (See id. at 15:12-18). Laboratory testing confirmed that the substance weighed 2.62 grams and contained heroin and fentanyl. (See id. at 15:21-22).

On December 14, 2017, the informant arranged to purchase an ounce of cocaine and a handgun, for $1,500 and $1,600, respectively. (See id. at 15:23-16:1). Once again, the informant met Sanabria-Robreno at an agreed-upon location and purchased the items with prerecorded funds. (See id. at 16:4-12). The handgun was a Ruger model P-95-DC 9mm pistol with an obliterated serial number, and laboratory testing showed that the substance weighed 27.87 grams and contained cocaine. (See id. at 16:8-15).

In February 2018, a grand jury indicted Sanabria-Robreno on seven counts of distributing controlled substances, and one count each of using and carrying a firearm in furtherance of drug trafficking and possessing a firearm with an obliterated serial number. (See Doc. 8 (Counts 1-8, 11). Given Sanabria-Robreno's 2014 conviction in Dauphin County, Pennsylvania on four counts of unlawful delivery of heroin and one count of possession with intent to deliver heroin, the indictment further charged him under 18 U.S.C. § 922(g) as a felon in possession of a firearm. (See id. (Counts 9, 10); see also 9/26/18 Plea Hr'g Tr. 16:18-24). Sanabria-Robreno pled guilty to an information charging one count of distributing heroin and fentanyl and one count of possessing a firearm as a felon. His plea agreement set forth the mandatory minimum and statutory maximum sentences available for

those offenses. (See Doc. 33 at 3-4). The probation office prepared a presentence report. (See Doc. 50).

Prior to sentencing, Sanabria-Robreno objected to the presentence report because it designated him an armed career criminal, thereby subjecting him to a fifteen-year mandatory minimum sentence. (See 5/28/19 Sentencing Hr'g Tr. 3:13-21); 18 U.S.C. § 924(e). He argued that his previous convictions for dealing heroin and possessing heroin with intent to distribute—offenses that occurred on four separate dates in September 2014—should be treated as a single criminal episode. (See Sentencing Hr'g Tr. 4:12-24, 5:15-22).[2] An armed career criminal designation requires that a defendant have three prior convictions for a violent felony or a serious drug offense, or both, and that the underlying offenses were "committed on occasions different from one another." See 18 U.S.C. § 924(e)(1). If Sanabria-Robreno's 2014 convictions counted as a single episode, he would not be subject to the ACCA's sentencing enhancements.

Applying analogous precedent from our court of appeals and recognizing a weight of nonprecedential authority on this discrete question, the court concluded that Sanabria-Robreno had at least four prior convictions for a serious drug offense. (See Sentencing Hr'g Tr. 6:3-8:16) (discussing United States v. Schoolcraft, 879 F.2d 64 (3d Cir. 1989) (*per curiam*); United States v. Chatman, 487 F. App'x 769 (3d Cir.

---

[2] The sentencing hearing transcript correctly identifies three of the relevant dates as September 18, 24, and 26, 2014, but erroneously identifies the fourth date as September 27, *2017*. (See Sentencing Hr'g Tr. 4:12-24). The presentence report confirms that all of Sanabria-Robreno's pertinent offenses occurred in September 2014. (See Doc. 50 ¶ 37).

2012) (nonprecedential); United States v. Blair, 734 F.3d 218 (3d Cir. 2013); United States v. Swan, 661 F. App'x 767 (3d Cir. 2016) (nonprecedential); United States v. Ward, 753 F. App'x 112 (3d Cir. 2018) (nonprecedential)). We reasoned that "drug transactions constitute separate episodes when they are sufficiently distinct in time that the defendant had an opportunity to cease his activities," regardless of whether they were made with the same confidential informant, at the same location, or are prosecuted in the same proceeding. (See id. at 7:7-19). Accordingly, we overruled Sanabria-Robreno's objection and sentenced him to the mandatory-minimum term of 180 months' imprisonment. (See id. at 8:15-16, 19:13-17).

Sanabria-Robreno appealed, arguing that his guilty plea was invalid in light of the Supreme Court's decision in Rehaif v. United States, 588 U.S. ___, 139 S. Ct. 2191 (2019), because the court did not advise him that the government was required to prove that he knew he had been convicted of a crime punishable by more than one year of imprisonment at the time he possessed a firearm. Our court of appeals rejected that argument, holding that Sanabria-Robreno failed to establish plain error. See United States v. Sanabria-Robreno, 819 F. App'x 80, 81-82 (3d Cir. 2020) (nonprecedential). The Supreme Court denied his petition for a writ of certiorari on June 21, 2021. See Sanabria-Robreno v. United States, 141 S. Ct. 2817 (2021).

Sanabria-Robreno timely filed the instant motion pursuant to 28 U.S.C. § 2255. The motion is fully briefed and ripe for disposition.

**II.   Legal Standards**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may

4

afford relief under Section 2255 on several grounds, including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." See 28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

### III.   Discussion

Sanabria-Robreno challenges his designation as an armed career criminal on two grounds.  The first is the Supreme Court's recent decision in Wooden v. United States, 595 U.S. 360 (2022), which clarified what it means for offenses to be "committed on occasions different from one another," see 18 U.S.C. § 924(e)(1). (See Doc. 76-1 at 3-5 (citing United States v. Lewis, 833 F. App'x 261 (11th Cir. 2020))).[3]  The other focuses upon the First Step Act of 2018's supposed modification

---

[3] While Wooden was pending before the Supreme Court, the defendant in Lewis sought certiorari to challenge his own designation as an armed career criminal.  Lewis had argued unsuccessfully in the lower courts that three of his

of the meaning of "serious drug offense" under the ACCA. (See id. at 6-8); 21 U.S.C. § 802(57). We address each claim *seriatim*.

### A. Wooden

Sanabria-Robreno argues Wooden entitles him to relief. (See Doc. 76-1 at 8; Doc. 81 at 1). He is mistaken. In Wooden, the petitioner had burglarized ten units in a single storage facility over the course of an evening and subsequently pled guilty to ten counts of burglary. See Wooden, 595 U.S. at 362-63. Nearly two decades later, he was convicted of being a felon in possession of a firearm and received a much higher sentence than he otherwise would have due to the ACCA's sentencing enhancements. See id. at 364. The district and intermediate appellate courts concluded that the enhancements were appropriate because Wooden's earlier convictions counted as ten serious crimes. See id. at 363.

The Supreme Court reversed. Applying the ordinary meaning of the word "occasion," the Court held that Wooden's burglaries were not "committed on

---

convictions for selling cocaine in violation of Florida law in 1990 should not have been counted as separate offenses even though they occurred on three different days in an 18-day period. See Lewis, 833 F. App'x at 267. The Supreme Court granted Lewis's petition, vacated the judgment of the Eleventh Circuit Court of Appeals, and remanded the case for consideration in light of its decision in Wooden. See Lewis v. United States, 142 S. Ct. 1439 (2022).

As we recognized when denying Sanabria-Robreno's motion for an extension of time, any decision from the United States Court of Appeals for the Eleventh Circuit in Lewis would not be binding in this circuit. (See Doc. 77 at 2). As the government points out, the Supreme Court's order vacating Lewis in light of Wooden neither supports not nor undermines Sanabria-Robreno's claim because it is not a decision on the merits. (See Doc. 80 at 9-10 n.5 (citing Washington v. Sec. Pa. Dep't of Corr., 801 F.3d 160, 168 (3d Cir. 2015) (orders from the Supreme Court granting *certiorari*, vacating without finding error, and remanding are not merits decisions)).

occasions different from one another" for purposes of the ACCA's sentencing provisions. See id. at 363, 366-76; 18 U.S.C. § 924(e)(1). The Court cautioned against a "hyper-technical focus on the precise timing of elements," and instead stressed the multifactorial nature of the inquiry. See Wooden, 595 U.S. at 369. Timing, proximity of location, and the character of and relationship between the offenses "may be relevant" considerations. See id. Significantly, the Court explained that "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." See id. at 369-70. To that end, the Court cited with approval the fact that courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" See id. at 370 (quoting United States v. Rideout, 3 F.3d 32, 35 (2d Cir. 1993); citing United States v. Riddle, 47 F.3d 460, 462 (1st Cir. 1995)).

Sanabria-Robreno's reliance upon Wooden is misplaced. The Wooden Court's analysis is entirely consistent with the standard set forth by the Third Circuit in Schoolcraft, which this court faithfully applied in adjudicating Sanabria-Robreno's objection to his designation as an armed career criminal. Wooden acknowledged that the timing, location, and character of the offenses at issue are important factors to consider when assessing whether they should be grouped together or counted separately for ACCA purposes. See Wooden, 595 U.S. at 369. The record demonstrates that Sanabria-Robreno sold heroin on four different days: September 18, 24, 26, and 27, 2014. Although he sold heroin to the same informant on each occasion, the gaps between the first and second offenses (6 days) and the second and third (2 days) easily satisfy Wooden's approved metric for offenses

7

committed "a day or more apart."  <u>See</u> <u>id.</u> at 370.  Moreover, Sanabria-Robreno's conviction for possessing 14 bundles of heroin in his apartment with intent to distribute is conceptually distinct from the convictions he incurred for the completed sales that took place nearby.  (<u>See</u> Doc. 50 ¶ 37).  At a minimum, then, Sanabria-Robreno sold heroin on at least three occasions, not one, and he committed at least four serious drug offenses in the span of nine days in September 2014 considering the discrete possessory offense.  These offenses occurred "on occasions different from one another."  <u>See</u> 18 U.S.C. § 924(e)(1).  Thus, the ACCA's sentencing enhancements apply.

> **B.** **First Step Act**

Sanabria-Robreno cursorily alludes to the First Step Act and its purported effect on the definition of "serious drug offense" as it appears in Section 924(e)(2) of the ACCA.  (<u>See</u> Doc. 76 at 5-7 (citing 21 U.S.C. § 802(57))).  Our court of appeals has already rejected the notion that the First Step Act changed the meaning of that phrase.  <u>See</u> <u>United States v. Winn</u>, No. 20-1477, 2022 WL 636633, at *4 (3d Cir. Mar. 6, 2022).  The First Step Act "modified the predicate offenses *for a different sentencing enhancement* under 21 U.S.C. § 841(b)."  <u>See</u> <u>id.</u> (emphasis added).  That other enhancement "increases the sentences of certain offenders who previously committed a 'serious drug felony,' defined as an offense under [Section] 924(e)(2)—that is, a 'serious drug offense' or a 'violent felony' under the ACCA—that also meets two additional requirements."  <u>See</u> <u>id.</u>  In other words, the First Step Act "borrowed" the phrase "serious drug offense" from the ACCA and "combined it with other requirements to establish the new 'serious drug felony' term"—it "did

not change the meaning of a 'serious drug offense' under the ACCA." See id. Sanabria-Robreno's state-law convictions were, and remain, serious drug offenses for ACCA purposes. His secondary argument is, therefore, unavailing.

**IV.** **Conclusion**

For these reasons, we will deny Sanabria-Robreno's motion. An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: November 20, 2023